UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| NELLY GUEVARA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:26-cv-00137-SEB-KMB |
| | ) | |
| TODD BLANCHE Acting Attorney General, | ) | |
| MARKWAYNE MULLIN Sec. of Homeland | ) | |
| Security, | ) | |
| SAMUEL OLSON Field Office Director for ICE | ) | |
| Chicago Field Office, | ) | |
| SCOTT MAPLES in his official capacity as Jailer | ) | |
| of Clark County Detention Center, | ) | |
| TODD LYONS in his official capacity as Acting | ) | |
| Director of Immigration and Customs | ) | |
| Enforcement, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING IMMEDIATE RELEASE**

Petitioner Nelly Guevara is a noncitizen who has been subject to a final order of removal since 2016. The government placed her on an order of supervision ("OSUP") in 2012. Thirteen years later, on February 9, 2026, Immigration and Customs Enforcement ("ICE") agents arrested Ms. Guevara. This Court granted Ms. Guevara's previous petition for writ of habeas corpus because her OSUP was never revoked by any official with authority to do so or according to the prescribed legal process. *Guevara v. Maples*, No. 4:26-cv-00040-SEB-KMB, dkt. 13. She was released from custody but has since been re-detained. Ms. Guevara's petition for a writ of habeas corpus seeks immediate release from detention based and declaratory and injunctive relief. For the reasons described below, the Court **grants** Ms. Guevara's petition.

1

## I. Background

Ms. Guevara, a Honduran citizen, entered the United States in 2012. Dkt. 11-1 at 10–11. She was found to be inadmissible under 28 U.S.C. § 1225(b)(1)(7)(A)(i)(I) as lacking the proper entry documents, and an Order of Removal was signed on July 29, 2012. Dkt. 11-2. She was issued an Order of Supervision (OSUP) on July 31, 2012. *Guevara v. Maples*, No. 4:26-cv-00040-SEB-KMB ("*Guevara I*"), dkt. 1-2. She obtained work authorization to legally work in the United States in 2024, though the authorization expired in July 2025. *Guevara I*, dkt. 1-4. Ms. Guevara contends that she has no criminal convictions and has complied with all ICE reporting requirements. Dkt. 1 ¶ 30; *see also* dkt. 11-1 at 11 (confirming "no criminal history in the United States"). The respondents do not contend that Ms. Guevara was noncompliant with reporting requirements.

On May 21, 2026, Ms. Guevara reported for an appointment at the Louisville, Kentucky, ICE office and was taken into custody pursuant to an I-200 administrative warrant. Dkt. 11-1 at 5, 11. She is detained at the Clark County Jail, dkt.11-4, and is subject to a final order of removal, *id.* at 1.

The same day, a Notice of Revocation of Release issued, stating that Ms. Guevara's release has been revoked pursuant to 8 C.F.R. § 241.4(*l*) because enforcement of the removal order is appropriate and ICE had obtained a travel document and scheduled her removal to take place no later than June 21, 2026. Dkt. 11-1 at 7. An ICE officer certified that they served the notice on Ms. Guevara, who refused to sign the notice. *Id.* at 8. The Notice was signed by Frank T. Padula as "(A) FOD," which the Federal Respondents indicate in their brief stands for "Acting Field Office Director."[1] *Id.*; dkt. 11 at 3.

---

[1] Ms. Guevara posits (A) FOD could also stand for "Assistant Field Office Director. Dkt. 14 at 4.

Respondents have submitted a signed Alien Informal Interview form indicating that an Officer Rosado conducted an initial informal interview of Ms. Guevara on May 21, 2026, to afford her an opportunity to respond to the reasons for revocation of her order of supervision stated in the notification letter. Dkt. 11-1 at 9.

## II. Legal Standard

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, the contention is that Ms. Guevara's detention is unlawful because the respondent failed to follow applicable regulations and illegally revoked her OSUP.

In general, when a noncitizen is ordered removed, the Attorney General is to remove the noncitizen within 90 days. 8 U.S.C. § 1231(a)(1). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). Noncitizens who have been ordered removed for certain specified reasons may be released, subject to supervision, at the Attorney General's discretion. 8 U.S.C. § 1231(a)(6). Federal regulations specify that ICE may release individuals and place them on an OSUP only if they "demonstrate[ ] to the satisfaction of the Attorney General . . . that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal." 8 C.F.R. § 241.4(d)(1); *see also id*. § 241.4(e)(6).

Federal regulations prescribe procedures for revoking an OSUP and for returning a removable noncitizen to custody. Discretionary revocation of release for reasons other than violation of conditions of release is governed by 8 C.F.R. § 241.4(*l*)(2).[2] This is the regulation that

---

[2] Neither party argues that Petitioner violated the conditions of her OSUP.

controls here. It differs from § 241.4(*l*)(1) in that it specifically identifies who may revoke release

and on what basis. Specifically, it grants discretion to revoke release to an Executive Associate

Commissioner or, in more limited circumstances, to a District Director. The District Director may

act only if, in his or her opinion, "revocation is in the public interest and circumstances do not

reasonably permit referral of the case to the Executive Associate Commissioner."

Section 241.4(*l*)(2) specifies that either official may revoke release only if, in the official's

opinion:

(i)    The purposes of release have been served;

(ii)   The alien violates any condition of release;

(iii)  It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv)   The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

The Administrative Procedure Act requires federal courts to "hold unlawful and set aside

agency action" that is found to be:

(A)    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B)    contrary to constitutional right, power, privilege, or immunity; [or]

(C)    in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]

5 U.S.C. § 706(2). "[C]ourts have consistently demanded governmental compliance with

administrative regulations designed to safeguard individual interests." *Martinez Camargo v. I.N.S.*,

282 F.3d 487, 491 (7th Cir. 2002); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S.

260, 267–68 (1954) ("We think the petition for habeas corpus charges the Attorney General with

precisely what the regulations forbid him to do: dictating the Board's decision. [W]e object to the

Board's alleged failure to exercise its own discretion, contrary to existing valid regulations."). ICE

4

is "required to follow [its] own regulations . . . including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021); *see also K.E.O. v. Woosley*, 2025 WL 2553394, at \*3 (W.D. Ky. Sept. 4, 2025) ("ICE's failure to follow their own regulations violate the *Accardi* doctrine and K.E.O.'s procedural due process rights."); *N.A.L.R. v. Bondi, et al.*, Case No. 4:25-cv-00192-SEB-KMB, 2025 WL 2987239, at \*3 (S.D. Ind. Oct. 23, 2025) (same).

### III. Analysis

Ms. Guevara argues that, because of her OSUP, she cannot be removed and therefore her OSUP cannot be revoked. The case that she cites—*Fornalik v. Perryman*, 223 F.3d 523 (7th Cir. 2000)—supports her argument only insofar as her OSUP must be respected "unless and until, through authorized procedures," the OSUP is revoked. *Id.* at 533.

Ms. Guevara contends that the revocation of her OSUP did not occur through the authorized procedures. Respondents dispute this.

The relevant regulation grants discretion to revoke release on an OSUP to an Executive Associate Commissioner or, in more limited circumstances, to a District Director. 8 C.F.R. 241.4(*l*)(2). Specifically, "[a] district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*

"Director" for purposes of § 241.4(*l*)(2) is defined in 8 C.F.R. § 1.2:

Director or district director prior to March 1, 2003, means the district director or regional service center director, unless otherwise specified. On or after March 1, 2003, pursuant to delegation from the Secretary of Homeland Security or any successive re-delegation, the terms mean, to the extent that authority has been delegated to such official: asylum office director; director, field operations; district director for interior enforcement; district director for services; *field office director*; service center director; or special agent in charge. *The terms also mean such other official, including an official in an acting capacity*, within U.S. Citizenship and

> Immigration Services, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, or other component of the Department of Homeland Security *who is delegated the function or authority above for a particular geographic district, region, or area.*

8 C.F.R. § 1.2 (emphasis added). Thus, the "Acting Field Office Director" is a "district director" for the purposes of § 241.4(*l*)(2) when he or she is "delegated the function or authority above for a particular geographic district, region, or area."

Ms. Guevara's revocation of OSUP was signed by Frank T. Padula, whose title is listed as "(A) FOD." Dkt. 11-1. Accepting the respondents' statement that Mr. Padula's unabbreviated title is Acting Field Office Director, there is no evidence that Mr. Padula was properly delegated the function or authority of a field office director by a person with the authority to delegate it.

Respondents submit a delegation order that delegates to *Assistant* Field Office Directors (which is abbreviated "AFODs," without parens), "[a]uthority under INA § 241 [8 U.S.C. § 1231] and 8 C.F.R. Part 241, relating to warrants of removal, reinstatement of removal, self-removal, and release of aliens from detention." Dkt. 11-3. The delegation order is silent as to *Acting* Field Office Directors, and there is no other information indicating how and by whose authority Mr. Padula assumed the title Acting Field Office Director, much less if he was delegated the authority to revoke orders of supervision by someone with the authority to make that delegation.

Additionally, there is no indication in the record that, even if it were established that Mr. Padula had authority to revoke OSUPs, he was of the opinion that revocation was in the public interest and circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner. This is a necessary condition for a Field Office Director to have the authority to revoke an OSUP. He did not make a record of any such opinion in the notice of revocation, dkt. 11-1 at 7–8, nor do Respondents even respond to Ms. Guevara's contention that there was no record

that Mr. Padula held that opinion, *see generally* dkt. 11; *see also* dkt. 1 ¶ 106 (issue raised in petition).

In sum, Ms. Guevara has made a showing that she was released subject to an OSUP and that her release was not revoked by an official with authority or according to the process the law prescribes. Respondents have not shown otherwise. This leads the Court to an unavoidable conclusion: the federal respondents did not comply with the regulatory requirements when purportedly revoking Ms. Guevara's OSUP. Ms. Guevara is entitled to relief. The Court declines to discuss her other arguments.

**A.  Proper Remedy**

Ms. Guevara requests immediate release. This case is similar to *N.A.L.R. v. Bondi*, where petitioner demonstrated that following her initial arrest and release subject to an OSUP, her release was never revoked by any official with authority to do so or according to the prescribed legal process. 2025 WL 2987239, at *3. Where, as here, revocation of petitioner's release and her current detention violate the APA and *Accardi* doctrine, both must be rescinded and set aside. *Id*. at *3 n.2 (collecting cases demonstrating that district courts around the country have ordered immediate release of noncitizens being detained without compliance with 8 C.F.R. § 241.4(*l*)).

Ms. Guevara also asks the Court to order that any future re-detention attempts comply with all regulatory and constitutional requirements. Because Respondents are already subject to those requirements, such an order is unnecessary. The Court also finds the requested order regarding documentation of compliance with regulatory and constitutional requirements to be unnecessary at this time.

## IV. Conclusion

Ms. Guevara's petition for a writ of habeas corpus is **granted** to the extent that Ms. Guevara is **ordered released forthwith from custody** subject to her most recent order (and conditions) of supervision. The respondents are allowed until **July 24, 2026**, to certify to the Court that Ms. Guevara has been so released from detention.

Final Judgment will issue by separate entry.

**IT IS SO ORDERED.**

Date:   07/17/2026

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Rania Attum
rania@attumlaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov